## CERTIFICATE OF SERVICE

I, Efrain Lynn, hereby certify that on this 10th day of February, 2025, I did

place the enclosed Reply Motion regarding Motion Requesting a Reduction in

Sentence Pursuant to 18 U.S.C. § 3582, in the prison mailing system addressed to

the following parties:

United States District Court
Court Clerk
50 Walnut Street
Newark, NJ 07102

RECEIVED

FEB 13 2025

AT 8:30 _____ M
_____

United States Attorney's Office
ECF

Signed under the penalty of perjury

this 10th day February 2025.

Efrain Lynn

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF NEW JERSEY

**EFRAIN LYNN**

Petitioner,

vs.

**UNITED STATES OF AMERICA**

Respondent.

RECEIVED

FEB 13 2025

Case No: 07-454-03

---

## RESPONSE TO THE GOVERNMENT'S MOTION IN OPPOSITION FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582

---

The Government has responded to Mr. Lynns motion seeking a reduction in sentence under 18 U.S.C. §3582. In its response the government argues that the Court does not have the authority to reduce the sentence in this case, and with its argument contends that Mr. Lynn should die in prison.

Again Mr. Lynn makes no excuses for his involvement in the crime at issue and has remorse for the actions that he committed. Today Mr. Lynn understands that he deserved a significant sentence and he submits that the term that he has

1

served thus far is sufficient but not greater than necessary to achieve the goals of sentencing. The punishment in this case has been achieved and there is nothing left to gain in this case with continued incarceration but suffering as well as a colossal waste of resources.

> **A. The Sentencing Commission did not exceed its Congressionally delegated Authority in Promulgating Subsection (b)(6) as the Government argues. Therefore, this Court has the authority to reduce the sentence in this case.**

The U.S. Sentencing Commission properly promulgated U.S.S.G. § 1B1.13(b)(6), the "unusually long sentence" provision, and that provision is reasonable and valid under the broad authority Congress delegated to the Commission. Lynn also satisfies the "unusually long sentence" criterion, and he has established extraordinary and compelling circumstances.

When Congress created the U.S. Sentencing Commission, it provided the Commission with "broad" discretion to create and amend the Sentencing Guidelines. United States v. LaBonte, 520 U.S. 751, 753, 757 (1997). Within this broad discretion, Congress instructed the Commission to promulgate "general policy statements" on what constitutes an extraordinary and compelling circumstance that justifies relief under 18 U.S.C. § 3582(c)(1)(A). Congress further instructed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied

and a list of specific examples." 18 U.S.C. § 994(t). Congress prescribed only one limitation on the Commission's powers to promulgate a policy statement: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id. Congress, through the statutory text, thus provided the Commission with broad authority to create criteria for § 3582(c)(1)(A) sentence reductions, so long as rehabilitation alone was not a criterion.

The government is thus incorrect that the statutory text renders the Commission's work invalid; rather, the text supports the view that it is the Commission, not courts, that "shall describe what should be considered extraordinary and compelling reasons for sentence reduction." 18 U.S.C. § 994(t); see also United States v. Kelly, 996 F.3d 1243, 1255 (11th Cir. 2021) ("There is no question that 1B1.13 is the policy statement the Commission adopted to comply with this statutory mandate." (citations omitted)). See United States v. Thacker, 4 F.4th 569, 574 (7th Cir. 2021).

The statutory purpose and legislative history also support the view that the Commission can determine what is an extraordinary and compelling circumstance, such as an "unusually long sentence." U.S.S.G. § 1B1.13(b)(6). Congress's initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." Yet

3

even with the removal of parole, the Senate Committee noted that some individual cases may still warrant a second look at resentencing:

The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment. S. Rep No. 98-225, at 52, 53 n.74 (1983) (emphasis added).

Rather than having the Parole Commission review every federal sentence, Congress decided that § 3582(c) would allow courts to decide, in individual cases, whether "there is a justification for reducing a term of imprisonment." Id. at 56. Congress intended for § 3582(c) to act as "safety valves for modification of sentences," enabling sentence reductions when justified by factors that previously could be addressed through the (now abolished) parole system. Id. at 121. The safety valve would "assure the availability of specific review and reduction to a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in the guidelines." Id. Noting that this approach would keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, the statute permitted "later review of sentences in

particularly compelling situations." Id. at 53. The Commission's promulgation of the (b)(6) provision is thus wholly consistent with the purpose and history of § 3582(c)(1)(A).

1. **The government seems to argue and cite to decisions that are inapposite on the question whether the Commission exceeded its authority in promulgating U.S.S.G. § 1B1.13(b)(6). (Dkt#746 at 6-9).**

The government notes and or indicates that several courts have held that a claimed error in a defendant's judgment cannot provide extraordinary and compelling reasons for a sentence reduction, and that a defendant cannot resort to Section 3582(c)(1)(A)(i) to circumvent the normal process of direct and collateral review. The government's view of those cases and the "unusually long sentence" provision is incorrect. For starters, the Commission's (b)(6) provision does not condition extraordinary and compelling circumstances upon legal error in a defendant's judgment. It provides for a reconsideration of an "unusually long sentence," if the defendant meets certain criteria. U.S.S.G. § 1B1.13(b)(6). A defendant therefore can obtain a sentence reduction under § 3582(c)(1)(A) on completely different legal grounds than legal error pursued through direct appeal and collateral attack. Lynn is not arguing that his sentence is in error. He argues that he received an unusually long sentence, based partly on a statute that has since been amended and a sentencing regime that the Supreme Court later determined

unconstitutional, and those changes in law create a gross disparity between the sentence he would receive today or that the Court could impose today. Lynn thus raises a claim that would not succeed on direct appeal or collateral attack.

The Commission has spoken and promulgated criteria for § 3582(c)(1)(A) sentence reductions. That decision is entitled to substantial deference. See Braxton v. United States, 500 U.S. 344, 348 (1991) ("The Guidelines are of course implemented by the courts, so in charging the Commission 'periodically to review and revise' the Guidelines, Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." (cleaned up)). Indeed, the Commission's interpretation of § 3582 is entitled to Chevron deference. See Nat'l Cable & Telecom. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982–83 (2005). The Commission's promulgation of (b)(6) is reasonable and valid.

**3. The context of the statute also does not make the Commission's promulgation of (b)(6) unreasonable.**

The government argues that the Commission's promulgation of (b)(6) is contrary to the context of 18 U.S.C. § 3582(c)(1)(A), because if judges have the power to grant relief under (b)(6), then it will create unwarranted sentencing disparities. That too is wrong. To begin with, Congress obviously was aware that

by providing the Commission with broad discretion to create criteria for §

3582(c)(1)(A), it would produce at least some sentencing disparities. Take two co-

defendants sentenced to ten years each, one of which experiences terminal illness

after serving a year in prison. That ill defendant files for a sentence reduction on

medical grounds and is granted release after serving one year. That result, of

course, could create a sentence disparity (both with his codefendant and

nationally). But that is a warranted sentencing disparity that Congress created

through § 3582, which creates numerous exceptions to the finality of federal

sentences. The government takes no issue that the medical, age, and family criteria

create sentencing disparities— its only issue is with (b)(6). Congress carved out

exceptions to its determinate sentencing regime, many of which will create

sentencing disparities. The Commission's promulgation of (b)(6) is no different.

Second, the context behind the Sentencing Reform Act and § 3582 is that

Congress sought to abolish federal parole, replace it with mostly determinate

sentencing, and then provide the Commission with specific exceptions to allow

defendants to obtain relief from an "unusually long sentence." S. Rep No. 98-225,

at 52, 53 n.74 (1983). Nothing the Commission promulgated is inconsistent with

that context. The government simply disagrees with the Commission's reasonable

promulgation of criteria because this particular criterion empowers judges to

rectify unusually long sentences by means of a sentence reduction.

**4.  The Commission's promulgation of (b)(6) is not in tension with the separation of powers when Congress specifically delegated its authority to the Commission to create criteria for what constitutes extraordinary and compelling circumstances and foreclosed only one ground of relief— rehabilitation alone.**

The Commission's promulgation of (b)(6) is not in tension with the separation of powers because it empowers courts to ignore Congress's retroactivity determinations on a case-by-case basis. But there is no separation of powers problem with the Commission promulgating (b)(6).

Congress does not make retroactivity decisions on a case-by-case basis. Rather, Congress conditions the retroactivity of new changes in sentencing law wholesale. If Congress had made the changes to 28 U.S.C. § 851 in the First Step Act retroactively applicable, all defendants sentenced under that provision would have recourse to resentencing. By contrast, the Commission's promulgation of (b)(6) requires a defendant to assert that the defendant received an unusually long sentence; that the sentence was based, in part, on one or more changes in the law; and that those changes in law would produce a gross disparity between the sentence the defendant received and the sentence that would be imposed today. Consequently, the Commission has not overridden Congress's retroactivity

determinations. It has instead promulgated a provision, under the broad authority given to it by Congress, that allows some defendants sentenced under § 851 and §924 (c) stacked sentences to seek a sentence reduction. Put differently, the Commission's promulgation of (b)(6) to allow some defendants to obtain relief under changes of law is not the same as Congress making a law retroactively applicable to all defendants. Because Congress provided the Commission with the power to promulgate criteria (except for rehabilitation alone) applicable to § 3582(c)(1)(A), and because the Commission has followed that delegation, there is no separation of powers problem.

Again, as noted above, nothing the Commission did in promulgating (b)(6) conflicts with any statute Congress has enacted or is inconsistent with the delegation Congress provided to the Commission. The reason the Commission created a carve-out from (b)(6) for non-retroactive Guidelines amendments is not due to separation of powers concerns. It is because Congress created a separate mechanism for sentence reductions based on retroactive Guideline amendments, and the Commission—consistent with the delegation Congress provided— followed the text of the statute. See 18 U.S.C. § 3582(c)(2). The Commission considered the statutory text, purpose, context, and potential separation of powers concerns in promulgating (b)(6), and that promulgation is a valid exercise of the broad delegation that Congress provided the Commission. The government's

argument that, "the commission's policy statement, § 1B1.13(b)(6), is unreasonable and therefore invalid…" is without merit.

In other words, Congress through the Sentencing Commission has made clear that Federal Sentencing Judges not only are in the best position to determine if a reduction is appropriate but also have the power to do so. Mr. Lynn has established extraordinary and compelling circumstances under U.S.S.G. § 1B1.13(b)(5) for a reduction in sentence.

Mr. Lynn falls under the amendments to Section 1B1.13 render the policy statement applicable to defendant-filed motions. That change is reflected in new subsections (b)(6) and (c), which provide:

(6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c) LIMITATION ON CHANGES IN LAW.— Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines

Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction. 88 Fed. Reg. at 28,255; see Sentencing Guidelines § 1B1.13(b)(6), (c). Subsection (b)(6) is not contrary to the statute's text, structure, and purpose, and is not limited by the government's misunderstanding of Congress's clear directive that any such reasons be both extraordinary and compelling.

As this Court is well aware Courts all over the country have reduced stacked 924 (c) sentences finding that District Court judges have the power to do so.

## B. Defendant Has Not Failed to Exhaust Administrative Requirements

Mr. Lynn has exhausted his remedy contrary to what the Government contends. My Lynn attached as an exhibit his request to the warden as well as the envelope that he put that request in and sent. Mr. Lynn would be a fool to fill out an envelope, write a request, put first class postage on the envelope and not send it. Here, the evidence demonstrates that Mr. Lynn did exactly what Congress required

him to do and he provided this Court with evidence that he has done so. Whether

the FBOP lost or misplaced the request or simply threw it away should not be

detrimental to Mr. Lynn in light of the evidence that he exhausted his remedy by

sending it to the warden and filing the instant motion 30 days later with this Court.

Thus, the government's argument is erroneous and factually flawed.

### C. Claims of Rehabilitation

The government titles its response as Claims of Rehabilitation but in the first

paragraph it acknowledges that Mr. Lynn has a record of rehabilitation.

"Defendant's efforts at rehabilitation are commendable..." (Dkt#258 at 5). These

are not just claims of rehabilitation they are evidence-based claims that Mr. Lynn

has turned his life around and is no longer the immature young man that committed

the crimes at issue in this case. The government is correct that ""Rehabilitation of

the defendant alone shall not be considered an extraordinary and compelling

reason" that makes an inmate eligible for early release. Id at 5.

The problem with this argument is that this is not a case of rehabilitation

alone. There are many other factors that the Court can and should consider in

determining if there are extraordinary and compelling reasons to reduce the current

sentence. This includes his age at the time of his arrest, his rehabilitation, the fact

that he was sentenced under a statute the Congress has found to be overly harsh

and excessive and if sentenced today he would not be subject to. Thus, this is not a

case of rehabilitation alone but is a case with numerous extraordinary and compelling reasons in conjunction with the rehabilitation.

This leads us back to what Congress said through the Sentencing Commission. "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." There is a change in law here that was not retroactive, and this is exactly why the Sentencing Commission made these changes so that Courts can consider the changes in law that Congress found to be outdated, draconian and wrong. The government references United States v. Gordon, 585 F. Supp. 3d 716 (E.D. Pa. 2022), in support of leaving this unjust sentence in place. However, the Government ignores the cases mentioned by Mr. Lynn. See also ***United States v. Jamal Ezell***, Case No: 02-815-01, (2-11-21) in which Judge DuBois reduced the 132 stacked 924(c) sentence to time served and or 22 years after finding that the Court had the authority to do so. Judge Dubois wrote like the sentencing court in this case, in its Memorandum on sentencing dated March 3, 2006, the Court expressed concern over the unduly harsh nature of Ezell's sentence, stating, *"sentencing Mr. Ezel to prison for longer than the remainder of his life is far in excess of what is required to accomplish all of the goals of sentencing."* ***United***

*States v. Ezell*, 417 F. Supp. 2d 667, 671 (E.D. Pa. 2006), aff'd 265 F. App'x 70 (3d Cir. 2008). However, the Court "reluctantly conclude[d]" that Ezell had presented no grounds for reducing the 132-year mandatory sentence and that it was bound by law to impose the sentence. Id. at 672."

The court went on to say, "Having concluded that *Ezell's* sentence was indeed harsh, the Court thus examines whether, in combination with other factors related to *Ezell's* rehabilitation, the nature of *Ezell's* sentence constitutes an "extraordinary and compelling" reason meriting a sentence reduction under § 3582(c)(1)(A)(i). See *Brooker*, 976 F.3d at 238 (2d Cir. 2020) (naming "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction). Joining several courts of appeals, and a growing consensus of district courts, this Court determines that it does. See *McCoy*, 2020 WL 7050097 (affirming district courts' finding of extraordinary and compelling circumstances based primarily on the severity of defendants' § 924(c) sentences); *United States v. Gunn*, No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020) (vacating and remanding district court's denial of compassionate release motion based in part on the severity of defendant's § 924(c) sentence).

The government also ignores the stacked 924 (c) case in *United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020)

(finding extraordinary and compelling reasons based, in part, on defendant's "off the charts" sentence, "which is longer than Congress now deems warranted")."

Most recently other judges just across the state line have released people that have committed serious acts of violence including murder. See United States v. Gerald Miller, (EDNY 10-2024). On June 21, 1993, Gerald Miller was convicted after a seven-week jury trial of a host of crimes in connection with his role as leader of the once infamous "Supreme Team," a powerful cocaine-based trafficking organization that wielded substantial and tyrannical power over parts of Queens County for nearly a decade. Miller's specific criminal offenses include racketeering; criminally facilitating murder; engaging in a continuing criminal enterprise involving more than 1500 grams of cocaine base; conducting financial transactions with the proceeds of narcotics transactions; and distributing and possessing with intent to distribute more than 50 grams of cocaine base. Mr. Miller was also implicated in numerous murders and in fact implicated in committing them himself. Despite this the Court granted compassionate release and Mr. Miller was recently released from prison just weeks ago.

See United States v. Thomas Reynolds, (99-CR-520, 5-6-2022). Thomas Reynolds was a soldier in the Bonanno crime family of La Cosa Nostra. (Gov't Opp'n (Dkt. 809) at 1-2.) In September 2000, he pleaded guilty to one count of racketeering in violation of 18 U.S.C. § 1962(c). (Id.) As part of his plea, he

admitted to committing numerous predicates racketeering acts, including drug distribution, bank robberies and burglaries, extortion, attempted murder, **and several homicides.**

The Court granted a reduction in sentence despite the fact that there were several homicides finding that "a 36-year sentence is "sufficient, but not greater than necessary" to comply with the purposes of the federal sentencing factors, and this reduction is justified by extraordinary and compelling reasons, including pandemic-related conditions of confinement, Reynolds's rehabilitation, and his time served in state custody for the gun offense. Again, the Court granted an even further reduction after a second compassionate release was filed reducing the sentence to 32 years.

See Ramirez, 2021 WL 5233512, at *8, *10 (reducing sentence of "twice murderer" and racketeer from 48 to 40 years in light of his "dreadful upbringing," his young age when he committed his crimes, and his rehabilitation, which included participation in drug treatment, numerous classes, self-improvement programs, and support of fellow inmates); United States v. Qadar, No. 00-CR603 (ARR), 2021 WL 3087956, at *8 (E.D.N.Y. July 22, 2021)."

See also United States v. Donato, 03-CR-929 (NGG), at *2 (E.D.N.Y. Feb. 16, 2024); in which this Court reduced the sentence on compassionate release.

Between January 1979 until his arrest in November 2004, Mr. Donato participated in illegal gambling operations as a member of the Bonnano organized crime family. (Presentence Investigation Report ("PSR") (Dkt. 1415) ¶¶ 2, 3, 49, 55-59, 66.) For conduct connected to his role in the Bonnano Family, Mr. Donato pleaded guilty on November 8, 2005 to two counts: (1) illegal gambling and (2) **racketeering conspiracy predicated on attempted murder** and owning and operating gambling businesses, in violation of 18 U.S.C. §§ 1955, 1962(d), and 1963(a). (See Superseding Indictment S-3 (Dkt. 220 in No. 3-CR-929); November 8, 2005 Min. Entry (Dkt. 375 in No. 3-CR-929); PSR ¶¶ 1-4, 66-69.) On August 6, 2008, Mr. Donato pleaded guilty to conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5). (See Superseding Indictment S-9 (Dkt. 464); Aug. 6, 2008 Min. Entry (Dkt. 509); PSR ¶¶ 5-7, 33-34.) Mr. Donato was then sentenced to a 300-month (25 year) term of imprisonment plus three years of supervised release. (Judgment (Dkt. 583).) *In United States v. Holloway*, 68 F. Supp. 3d 310, 311 (E.D.N.Y. 2014); Judge Gleeson was able to reduce a sentence by 30 years stating, "'Even people who are indisputably guilty of violent crimes deserve justice, and now Holloway will get it." Judge Gleeson recognized that some people do deserve a second chance.

Here Mr. Lynn is asking this Court for a second chance to reclaim his life. He has spent many years of his life in prison. Today he is no longer the person he

17

once was when he was in his early 20's. Mr. Lynn respects the rule of law and has a newfound appreciation for his freedom. If given a second chance, he would not squander that opportunity. Today he has a wife and a family that cares for him that are willing to assist him with a successful reentry.

### Conclusion

Today Mr. Lynn is asking this Court for a second chance to reclaim his life in the same manner as the thousands of others that have been granted compassionate release. This Court should grant the motion for a sentence reduction and or the Government should find compassion and do what Former AG Loretta Lynch did when she was the United States Attorney in the Eastern District of New York in Holloway. Mr. Lynn deserves a second chance and at this time perhaps it is only the US Attorney's office *that can give that second chance to hi*m.

Respectfully Submitted,

Efrain Lynn

Dated: February 11, 2025

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL



**PRIORITY MAIL**
**FLAT RATE ENVELOPE**
**POSTAGE REQUIRED**

This package is made from post-consumer waste. Please recycle again.

# PRIORITY®
## MAIL

**UNITED STATES POSTAL SERVICE** — Retail

**P**  US POSTAGE PAID
**$10.10**  Origin: 14580
02/11/25
3590100980-1

**PRIORITY MAIL®**

0 Lb 5.10 Oz
**RDC 03**

EXPECTED DELIVERY DAY: 02/13/25

**C034**

SHIP TO:
RM 2020
402 E STATE ST
TRENTON NJ 08608-1500

**USPS TRACKING® #**



9505 5158 7353 5042 6621 19

strictions apply).*

d many international destinations.

form is required.

aims exclusions see the
ility and limitations of coverage.

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP



**FROM:**

**UNITED STATES POSTAL SERVICE** ◆ **PRIORITY® MAIL**



VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

RECEIVED
FEB 13 2025
AT 8:30_____ M
U.S. District Court - N J

**FROM:**

Efrain Lynn
#28601-050
Fct Victorville-Med-2
PO Box 3850
Adelanto, CA 92301

**TO:**

US District Court
Court Clerk  Rm 2020
402 E. State St.
Trenton, NJ. 08608

Label 228, December 2023   FOR DOMESTIC AND INTERNATIONAL USE





PAPER POUCH

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.