<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>   v.<br><br>EFRAIN LYNN,<br><br>                    Defendant. | Crim. No. 07-00454 (GC)<br><br><u>**OPINION**</u> |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court upon *pro se* Defendant Efrain Lynn's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (the First Step Act). (ECF No. 242.) The Government opposed (ECF No. 258), and Defendant replied (ECF No. 260). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b).[1] For the reasons set forth below, and other good cause shown, Defendant's Motion is **DENIED**.

**I.    BACKGROUND**

      **A.    The Offenses**

      The Court presumes the parties' familiarity with the underlying facts as set forth by the United States Court of Appeals for the Third Circuit in *United States v. Herra-Genao*, 419 F. App'x 288 (3d Cir. 2011). "This case involves a series of violent and tragic events which traumatized everyone involved." *Id.* at 290. From February to March 2007, Lynn and his co-defendants

---

[1]    Local Civil Rule 78.1 applies to criminal cases in the District of New Jersey. *See* L. Civ. R. 1.1; *United States v. Gibson*, Cr. No. 22-00320, 2024 WL 4476152, at *2 (D.N.J. Oct. 11, 2024).

"committed a series of four violent armed bank robberies in New Jersey." *Id.* Lynn and his co-defendants identified "easy-to-rob bank branches" and went to those bank branches armed with "handguns or large automatic weapons." *Id.* "In each case, once inside, one conspirator fired his weapon to frighten the employees, jumped over the counter, pointed his gun at the head of an employee, and demanded that money be put in a laundry bag. Once flushed with cash, [Lynn and his co-defendants] fled." *Id.* On April 5, 2007, FBI agents intercepted Lynn and his co-defendants as they arrived at a bank branch about to commit a fifth armed robbery. *Id.* While arresting one of Lynn's co-defendants, "a veteran FBI agent was shot and killed by an accidental discharge from the weapon of another agent." *Id.*

Lynn and his co-defendants were eventually indicted on numerous charges related to the bank robberies.[2] *Id.* 290-91. (*See also* ECF No. 41.) Ultimately, a jury found Lynn guilty of the following offenses: (1) conspiring to commit Hobbs Act robbery from February 8, 2007, through April 5, 2007, 18 U.S.C. § 1951; (2) two counts of armed robbery on March 2 and 16, 2007, 18 U.S.C. § 2113(a), (d); and (3) two counts of possession of a firearm in furtherance of a crime of violence on March 2 and 16, 2007, 18 U.S.C. § 924(c)(1)(A)(iii), 18 U.S.C. § 2. *Herrara-Genao*, F. App'x at 291. (*See also* ECF No. 72.) The district court (Thompson, J.) sentenced Lynn to a term of "481 months imprisonment, including 97 months on each of the conspiracy and armed robbery counts . . ., to run concurrently; 84 months on the first of the § 924(c) counts, to run consecutively; and 300 months on the remaining § 924(c) count . . ., to run consecutively."[3]

---

[2]   Lynn was not charged for the FBI agent's death. *See Herrara-Genao*, F. App'x at 290.

[3]   At the time of sentencing, Defendant was subject to the now rescinded "stacking" requirement of 18 U.S.C. § 924(c), which applied when a defendant was convicted of multiple § 924(c) offenses. *See United States v. Hodge*, 948 F.3d 160, 161 n.2 (3d Cir. 2020). "[B]efore the First Step Act, if [the defendant] was convicted of a second § 924(c) count, he faced an enhanced consecutive 300-month mandatory recidivist penalty—even though both counts came from the same indictment." *Id.* Under the revised version of § 924(c), a defendant convicted of multiple §

*Herrara-Genao*, F. App'x at 291. The Court also imposed five years of supervised release following the term of incarceration. *See Lynn v. United States*, Civ. No. 13-5730, 2015 WL 9480020, at *1 (D.N.J. Dec. 29, 2015). On appeal, the Third Circuit affirmed Lynn's convictions and sentence. *Herrara-Genao*, F. App'x at 301.

### B. Motion for Compassionate Release

On July 8, 2024, Lynn moved for compassionate release, asking the Court to reduce his sentence based on the following "extraordinary and compelling" reasons: (1) Defendant's rehabilitation efforts since being incarcerated; (2) Defendant's age at the time of sentencing; (3) elimination of the stacking requirement in 18 U.S.C. § 924(c); and (4) COVID-19 concerns. (*See generally* ECF Nos. 242 & 260.) Lynn also argues that the 18 U.S.C. § 3553(a) factors support reducing his sentence. (*See generally id.*) Finally, Lynn asserts that the Court can require a period of supervised release if his sentence is reduced. (ECF No. 242 at 36-37.[4])

In response to Defendant's Motion, the Government filed a letter seeking a stay of this case pending resolution of *United States v. Rutherford*, 120 F.4th 360 (3d Cir. 2024) and *United States v. Carter*, Crim. No. 24-1115, 2024 WL 5339852, at *1 (3d Cir. Dec. 2, 2024), two cases addressing the United States Sentencing Commission's amended policy statement on compassionate release and nonretroactive changes in the law, U.S.S.G. § 1B1.13(b)(6). (*See* ECF No. 248.) "Because the validity of U.S.S.G. § 1B1.13(b)(6) is relevant to Defendant's Motion," the Court stayed Defendant's Motion pending the decisions from the Third Circuit. (ECF No. 249.) Following the

---

924(c) offenses in the same case are subject only to the mandatory minimums, not the enhanced 300-month recidivist penalty. *Id.*

[4]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Third Circuit's decisions in *Rutherford* and *Carter*, the Court directed the Government to file a response to Defendant's Motion. (ECF No. 256.)

On February 7, 2025, the Government filed an opposition to Defendant's Motion, asserting the following: (1) Defendant failed to exhaust administrative remedies; (2) Defendant's claims regarding rehabilitation are not extraordinary or compelling to justify a compassionate release motion; (3) the *Rutherford* decision forecloses Defendant's argument regarding the stacking requirement in 18 U.S.C. § 924(c); (4) Defendant's COVID-19 concerns are not extraordinary and compelling reasons to reduce his sentence; and (5) the 18 U.S.C. § 3553(a) factors independently support denying Defendant's Motion. (*See generally* ECF No. 258.)

## II.   LEGAL STANDARD

A district court generally has limited authority to modify a federally imposed sentence once it commences. *Dillon v. United States*, 560 U.S. 817, 824 (2010) (noting that a sentence of imprisonment "may not be modified by a district court except in limited circumstances"). However, the First Step Act permits courts to grant compassionate release when there are "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act, passed in December 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194 (2018), enables defendants to file motions for compassionate release on their own behalf. Before the First Step Act, the Bureau of Prisons (BOP) was the "sole arbiter of compassionate release motions." *See United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). Although BOP still has "the first opportunity to decide a compassionate release motion, and may still bring a motion on a defendant's behalf," a defendant now "has recourse [by filing a motion in federal court] if BOP either declines to support or fails to act on that defendant's motion." *Id.*; 18 U.S.C. § 3582(c)(1)(A).

Once the First Step Act's procedural prerequisites are satisfied, a district court may reduce a defendant's sentence "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Burd*, Crim. No. 21-86, 2023 WL 3271167, at *1 (D.N.J. May 5, 2023) (quoting *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020), *aff'd*, 837 F. App'x 932 (3d Cir. 2021)).

### III. DISCUSSION

#### A. Procedural Prerequisites

The procedural prerequisites for judicial review of compassionate release motions require the defendant to "fully exhaust administrative remedies within the [Bureau of Prisons] or wait 30 days from the date the facility's warden receives defendant's request, whichever happens first." *United States v. Alston*, Crim. No. 03-844, 2023 WL 2238297, at *2 (D.N.J. Feb. 27, 2023) (citing 18 U.S.C. § 3582(c)(1)(A)); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). The burden is on the defendant to demonstrate that he satisfied this procedural prerequisite for judicial review. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020) (quoting *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020)). A defendant's noncompliance with section 3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release." *Raia*, 954 F.3d at 597.

As part of his Motion, Lynn attached a letter addressed to the Warden of FCI Victorville II, dated May 25, 2025. (*See* ECF No. 242-1 at 35-37.) The letter requests that the BOP file a motion for compassionate release on Lynn's behalf. (*Id.* at 37.) In response, the Government asserts that it "confirmed with the [BOP] and the FCI Victorville [facility] (through the BOP) that they have no record of receiving the letter and no record of the Warden replying to the letter denying

5

Defendant's request." (ECF No. 258 at 3.) Based on the competing assertions from the parties, the Court cannot ascertain whether Lynn in fact exhausted his administrative remedies. Nevertheless, even accepting Lynn's assertions that he submitted the letter and, therefore, exhausted his administrative remedies, the Court does not find "extraordinary and compelling reasons" to grant Lynn's Motion as addressed herein. *See United States v. Omar Council*, Crim. No. 19-00134, 2024 WL 2941526, at *3 (D.N.J. June 11, 2024) (finding that even if the court accepted the defendant's declaration as true that he submitted an electronic request to the warden regarding the filing of a motion for compassionate release, the court still would not find extraordinary and compelling reasons to grant the motion).

### B. Extraordinary and Compelling Reasons

The First Step Act does not define "extraordinary and compelling reasons," which means that district courts have some "flexibility and discretion to consider the unique circumstances" for each compassionate release motion. *United States v. Doolittle*, Crim. No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 398-99 (E.D. Pa. 2020)). When giving shape to this "otherwise amorphous phrase," courts may look to the statute's "text, dictionary definitions, and the policy statement" of the U.S. Sentencing Commission. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

In *Andrews*, the district court (affirmed on appeal) explained that "[t]he ordinary meaning of extraordinary is '[b]eyond what is usual, customary, regular, or common.' And the ordinary meaning of compelling need is '[a] need so great that irreparable harm or injustice would result if it is not met.'" *United States v. Andrews*, 480 F. Supp. 3d 669, 682-83 (E.D. Pa. 2020), *aff'd*, 12 F.4th 255 (3d Cir. 2021) (first quoting *Extraordinary*, Black's Law Dictionary (10th ed. 2014); and then quoting *Compelling Need*, Black's Law Dictionary (10th ed. 2014)).

As previously outlined, Defendant asserts that his rehabilitation efforts, changes to 18

6

U.S.C. § 924(c), COVID-19 related concerns, and his age all establish "extraordinary and compelling" reasons to grant his Motion. The Court will address each argument in turn.

### *1. Rehabilitation*

The Third Circuit has made clear that "rehabilitation cannot 'by itself' serve as an extraordinary and compelling reason for [a defendant's] release." *United States v. Stewart*, 86 F.4th 532, 536 (3d Cir. 2023) (citing U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t)); *United States v. Adeyemi*, 470 F. Supp. 3d 489, 499 (E.D. Pa. 2020) ("Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation . . . alone' does not suffice." (quoting 28 U.S.C. § 994(t))). Rather, "a defendant's rehabilitation may only 'contribute to extraordinary and compelling reasons.'" *McNair*, 481 F. Supp. 3d at 370 (quoting *Rodriguez*, 451 F. Supp. 3d at 405). "[A]bsent any other circumstances that could constitute extraordinary or compelling reasons for a reduction," efforts toward rehabilitation will not warrant granting a motion for compassionate release. *United States v. Gantt*, Crim. No. 06-00699-1, 2024 WL 3385493, at *3 (D.N.J. July 12, 2024).

In support of his rehabilitation argument, Lynn asserts that when he went to prison, he had "two roads . . . to choose from[.] . . . [O]ne was a road of mischief and trouble. The other was a road of self-betterment and rehabilitation. [I] chose the latter." (ECF No. 242 at 4.) As examples of his pursuit for self-betterment and rehabilitation, Lynn has completed various programs, such as drug abuse programs and victim impact courses, and maintained "an excellent work record in prison." (ECF No. 242 at 3-5, 33-34; ECF No. 242-1 at 1-37.) He also "submits that he is no longer the immature 21-year-old young man who made irrational and irresponsible choices to engage in criminal conduct, and that there is no concern that he would be a danger to the public if released." (ECF No. 242 at 5; *see* ECF No. 260 at 13.)

While the Court commends Lynn in his efforts to rehabilitate himself, the record indicates that he has a significant and troubling disciplinary history in prison, spanning approximately thirteen years. Between 2007 (the first year of his incarceration) to 2020, Lynn has been sanctioned on twenty separate occasions for incidents involving the following: (1) "possessing a dangerous weapon" (*8 times*); (2) "assaulting with serious injury" (*2 times*); (3) "assaulting [without] injury" (*7 times*) (4) "threatening bodily harm" (*1 time*); (5) "refusing to obey an order" (*4 times*); (6) "being insolent to staff member" (*1 time*); (7) "fighting with another person" (*1 time*). (*See* ECF No. 258, Ex. A.) The Court notes that many of these disciplinary infractions, of which Lynn makes no mention, are violent in nature. The Court finds that Lynn's disciplinary history directly contradicts his assertions that his rehabilitation efforts no longer make him a danger to the public and justify his release.[5] *See Gantt*, 2024 WL 3385493, at *3 (noting that "nine infractions for offenses such as fighting, assault, disruptive conduct, stealing, and others," raises concern for court given the risk of recidivism).

Indeed, courts in the Third Circuit have found that inmates with significantly more rehabilitative accomplishments and far less disciplinary infractions while incarcerated failed to meet the "extraordinary and compelling" reasons threshold. *See, e.g.*, *United States v. Manning*, Crim. No. 14-00326, 2025 WL 24717, at *3 (D.N.J. Jan. 2, 2025) (noting that while the defendant's "rehabilitation is certainly commendable," including completing several classes and release

---

[5] Lynn relies on *United States v. Skeeters*, Crim. No. 05-530-1, 2024 WL 992171 (E.D. Pa. Mar. 7, 2024), in support of his argument for rehabilitation. However, *Skeeters* is readily distinguishable from the present matter. In *Skeeters*, the court reduced the defendant's 82-year sentence to 28 years plus one month. *Id.* at *1, 6. But as justification for reducing the defendant's sentence, the court recognized that "[f]or the last nine years, [the defendant] has had no disciplinary infractions. A BOP psychologist has described him as 'a role model on and off the unit, focusing on pro-social activities and supporting others during periods of duress.'" *Id.* at 4. As already discussed, Lynn has an extensive disciplinary history that has spanned over a decade. Therefore, the Court finds that *Skeeters* does not support Lynn's contentions.

8

preparation programs, and earning his GED while incarcerated, he did not meet the "'extraordinary and compelling' threshold," especially given the defendant's two infractions while incarcerated); *United States v. Moore*, Crim No. 19-405, 2024 WL 4393138, at *4 (D.N.J. Oct. 2, 2024) (finding that the defendant having served five years of his twelve year sentence, "remained incident free," and "participated in all programs available to him," did not provide a basis for a reduced sentence); *United States v. Gordon*, 585 F. Supp. 3d 716, 717 (E.D. Pa.) (finding that (1) after serving 306 months of a 608 month sentence; (2) completing over 125 courses and 500 hours of educational programming; (3) receiving "numerous certificates in areas such as anger management, victim impact, and behavior modification"; (4) being an instructor for multiple courses; (5) learning to read, write, and understand Spanish; and (6) receiving no disciplinary violation in over eleven years, the defendant's "impressive" rehabilitation efforts were insufficient to find an "extraordinary and compelling" reason to reduce the defendant's sentence), *aff'd*, 2022 WL 2582547 (3d Cir. July 8, 2022). *But see United States v. Pray*, Crim No. 88-175, 2024 WL 4345067, at *7-8 (D.N.J. Sept. 30, 2024) (finding that although the case was a "close call," the "propriety of the relief sought is pushed over the top by [the defendant's] exemplary demonstration of rehabilitation" such as the following: (1) being a counselor to those incarcerated and not; (2) publishing two books intended to help underprivileged readers avoid succumbing to temptations associated with the drug industry; (3) designing and implementing educational programs for inmates intended to help change their lives; (4) having current and former government officials praise and support the defendant's work; (5) his exemplary behavior while incarcerated; and (6) his ability to quell tense situations between inmate gangs and be a positive influence on younger inmates).

Although Lynn's rehabilitation efforts while in prison are encouraging, they do not give rise to "extraordinary and compelling" reasons to warrant reducing his sentence.

### 2. *Nonretroactive Change in the Law*

The Third Circuit recently considered whether a nonretroactive change in the law could be considered an "extraordinary and compelling reason" to warrant a sentence reduction. *Rutherford*, 120 F.4th at 372. Specifically, the Third Circuit considered whether courts must be guided by the Sentencing Commission's 2023 amended policy statement (U.S.S.G. § 1B1.13(b)(6)) on compassionate release, which "said, for the first time, that courts could consider nonretroactive changes in law" such as the First Step Act's nonretroactive change to the "stacking" provision of 18 U.S.C. § 924(c). *Id.* at 363. The court held that "subsection (b)(6) in the amended Policy Statement, as applied to the First Step Act's modification of § 924(c), conflicts with the will of Congress and thus cannot be considered in determining a prisoner's eligibility for compassionate release." *Id.* at 376. This is so because "Congress explicitly made the First Step Act's change to § 924(c) nonretroactive." *Id.* The court also reaffirmed its holding in *Andrews*, noting that the duration of a defendant's sentence and nonretroactive changes in the law are not "'always irrelevant to the sentence-reduction inquiry' because they 'may be a legitimate consideration for courts at the next step of the analysis when [a court] weigh[s] the § 3553(a) factors.'" *Id.* at 377 (quoting *Andrews*, 12 F. 4th at 262). Nevertheless, "[w]hen it comes to the modification of § 924(c), Congress has already taken retroactivity off the table, so [courts] cannot rightly consider it." *Id.* at 378.

Because the mandates of *Rutherford* are clear, the First Step Act's modification of § 924(c) is not an "extraordinary and compelling" reason to reduce Lynn's sentence. *See Manning*, 2025 WL 24717, at *1 n.2 (noting that because of the Third Circuit's decision in *Rutherford*, the parties agreed that the defendant was "ineligible for relief under [U.S.S.G. § 1B1.13](b)(6)"); *see also*

10

*Andrews*, 12 F. 4th at 261 (noting that "the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence" (quoting *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring))).

        3.       ***COVID-19***

It is well settled that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 595. Here, Lynn's argument centers on the "mere existence" of COVID-19. Lynn argues that "extraordinary and compelling" reasons exist to reduce his sentence because COVID-19 created "harsher conditions of confinement" and because of his "health risks." (ECF No. 242 at 31.) Lynn further asserts that the "constant lockdowns . . . rendered three years of his sentence significantly 'harsher and punitive than would otherwise have been the case.'" (*Id.* (quoting *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020).) Additionally, Lynn asserts that "the lockdowns prevented [him] from seeing family and having any meaningful social contact, and from basic physical movement within the prison." (*Id.* at 31-32.) While the Court is sympathetic to Lynn's concerns surrounding COVID-19, courts have routinely found that similar arguments do not give rise to "extraordinary and compelling" reasons to justify reducing an inmate's sentence. *See, e.g.*, *United States v. Haynes*, Crim. No. 18-00058, 2023 WL 5287806, at *3 (D.N.J. Aug. 16, 2023) (C.J. Bumb) (rejecting compassionate release on the basis of the defendant's claim that the prison mishandled the pandemic by instituting "intensive lock-downs, no recreational time, extremely limited personal hygiene options, limited phone use to communicate with family, limited computer use for law library and family communication, no contact visits, cold meals always served late, and constant fear of getting infected and possible loss of life") (cleaned up).

11

Further, Lynn provides no explanation regarding how COVID-19 impacts his "particular health risks" or even what, in fact, are his health risks. To the extent Lynn is arguing that he is at risk for being diagnosed with COVID-19, this concern is outweighed by the fact that he has received the COVID-19 vaccine. (*See* ECF No. 258, Ex. B.) Indeed, courts in this District have regularly denied requests for compassionate release because of COVID-19, particularly after vaccines became widely available. *See, e.g.*, *United States v. Bishara*, Crim. No. 19-496, 2023 WL 4487766, at *2 (D.N.J. July 12, 2023) ("[W]hile this Court is sympathetic to Defendant's medical conditions—asthma and diabetes—he has failed to show that he is particularly vulnerable to developing severe illness due to COVID-19."); *United States v. Ragan*, Crim. No. 21-405, 2023 WL 4487772, at *3 (D.N.J. July 12, 2023) ("Although asthma and obesity may increase a defendant's risk of severe illness should he contract COVID-19, Defendant has not shown that his alleged medical conditions are uncontrolled or that he is at an increased risk of contracting COVID-19 at FMC Devens."); *United States v. Reddick*, Crim. No. 11-00293, 2022 WL 16922093, at *3 (D.N.J. Nov. 14, 2022) ("[N]ow that COVID-19 vaccinations are available to inmates in the Bureau of Prisons, compassionate release motions on the basis of COVID-19, Defendant's included, generally lack merit."); *United States v. Cottle*, Crim. No. 18-113, 2022 WL 1963658, at *2 (D.N.J. June 6, 2022) ("The Court certainly takes seriously Defendant's asthma diagnosis. But Defendant has not sufficiently shown how his condition is exacerbated by COVID-19 where he is fully vaccinated and has previously recovered from the virus.").

Therefore, Lynn has failed to assert how COVID-19 is an "extraordinary and compelling" reason for a reduced sentence.

    **4.**      *Age*

An offender's young age at the time of an offense may constitute an "extraordinary and compelling" reason to reduce a sentence. *See United States v. Andrews*, 480 F. Supp. 3d 669, 677

(E.D. Pa. 2020), *aff'd*, 12 F. 4th at 255.  But as the Third Circuit has made clear, a defendant's age by itself is "insufficiently compelling to warrant a reduced sentence."  *United States v. Herrera-Genao*, Crim. No. 21-2345, 2023 WL 2755577, at *3 (3d Cir. Apr. 3, 2023) (quoting *Andrews*, 12 F. 4th at 262).

Lynn argues that *Miller v. Alabama*, 567 U.S. 460 (2012), as well as various scientific studies meet the "extraordinary and compelling" threshold to warrant a reduced sentence because Lynn was only 21-years old at the time that he was sentenced.  (*See* ECF No. 242 at 6-21.)  First, the Court finds Lynn's reliance on *Miller* misplaced.  In *Miller*, the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"  567 U.S. at 465.  Because Lynn was not under the age of 18 at the time the offenses were committed (he was 20 years old), *Miller* does not apply.  *See United States v. Restrepo*, Crim. No. 02-684, 2024 WL 5249246, at *7 (D.N.J. Dec. 30, 2024) (finding that *Miller v. Alabama* did not apply to the defendant's youth argument because the defendant was over the age of 18 at the time the offenses were committed); *United States v. Jones*, Crim. No. 07-143, 2023 WL 2986928, at *5 (D.N.J. Apr. 18, 2023) ("Defendant's constitutional arguments related to *Miller v. Alabama* fail because *Miller* prohibits sentencing those under the age of 18 at the time of their offense to life without parole. . . .  [The] [d]efendant is not facing life without parole, and at the time of his offense, he was above the age identified in *Miller*, which was not increased by the First Step Act.").

Lynn also cites to various studies and case law to support the proposition that youthful offenders "cannot properly consider the consequences of their actions" and do not undergo full brain development until over the age of 21. (*See* ECF No. 242 at 6-21.)  However, Lynn's age at the time of the offenses or at sentencing cannot alone meet the "extraordinary and compelling"

13

threshold. "Even taking into account [the defendant's] age at the time of the original sentencing in the context of changes in understanding between the brains of adolescents and emerging adults and those of mature adults in terms of judgment and behavior," the Court finds that Lynn fails to show that the "combination" of issues that he has identified constitute extraordinary and compelling reasons for release.[6] *United States v. Clary*, Crim. No. 96-576, 2022 WL 17324343, at *9 (D.N.J. Nov. 29, 2022).

Indeed, for the reasons set forth above, there is no combination of Lynn's circumstances (*i.e.*, rehabilitation efforts, a nonretroactive change in the law, COVID-19, and his youth at the time of the offenses and sentencing) that would meet the "extraordinary and compelling" threshold for the Court to grant Lynn's Motion.

### C. 18 U.S.C. § 3553(a) factors

Ultimately, even if these circumstances rose to the level of extraordinary and compelling, the Court finds that the § 3553(a) factors weigh strongly against Lynn's release. Under 18 U.S.C. § 3553(a), a court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing, including the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," afford adequate deterrence, protect the public from additional crimes by the defendant, and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D). A court

---

[6] The Court also notes that courts typically credit a defendant's youth "when the offense involved 'split-second' and 'hot-headed' decisions." *United States v. Andrews*, Crim. No. 05-280, 2025 WL 35462, at *2 (E.D. Pa. Jan. 6, 2025) (quoting *United States v. Rosario*, Crim. No. 126-23, 2024 WL 3521851, at *7 (S.D.N.Y. July 24, 2024)). Lynn engaged in four armed robberies and planned to commit a fifth. The Court is reluctant to attribute such repeated, violent conduct to the impulsivity of youth.

14

must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," among other factors. *Id.* § 3553(a)(1), (6); *see also United States v. Tapia*, Crim. No. 23-1811, 2023 WL 4575946, at *2 (3d Cir. July 18, 2023) ("A district court 'may reduce the term of imprisonment' and 'impose a term of probation or supervised release' if it finds that 'extraordinary and compelling reasons warrant such a reduction.' Before granting such relief, a district court must consider the sentencing factors in § 3553(a)." (quoting 18 U.S.C. § 3582(c)(1)(A)(i))).

Here, Lynn's criminal actions are undoubtedly serious in nature. Thus, to promote respect for the law, provide just punishment, and afford adequate deterrence, the Court finds that Lynn must serve the greater part of his sentence. *See United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (affirming denial of compassionate release in bribery and fraud case where district court determined that the defendant's time served did not weigh in favor of release); *United States v. Doe*, 833 F. App'x 366, 368 (3d Cir. 2020) ("[T]he District Court did not abuse its discretion in assessing the seriousness of Doe's offense of conviction."); *United States v. Neff*, 523 F. Supp. 3d 726, 729 (E.D. Pa. 2021) ("Given the seriousness of the offenses of conviction, Defendant's release, with less than fifty percent of his sentence served, would not reflect the seriousness of the offenses, promote respect for the law, or provide just punishment for the offenses."); *United States v. Burney*, Crim. No. 18-00606, 2021 WL 62302, at *3 (D.N.J. Jan. 6, 2021) ("Accordingly, Defendant Burney presents a danger to the community, and the Court finds that releasing him at this time would not reflect the seriousness of his offense, nor promote respect for the law. To be sure, Courts in this circuit have consistently considered the seriousness of multiple bank robberies in denying compassionate release in order to protect the public from further crimes of the

15

defendant.").

Most importantly, pursuant to U.S.S.G. § 1B1.13(a)(2), "the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines" that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The Court is troubled by Lynn's disciplinary violations spanning approximately 13 out of the 18 years he has been incarcerated.[7] Lynn's disciplinary violations suggest a potential to recidivate, and the sanctions involved violence or possessing a dangerous weapon consistent with Lynn's underlying convictions. Courts in the Third Circuit regularly deny motions for compassionate release when inmates have received disciplinary sanctions while incarcerated. *See, e.g.*, *United States v. Robinson*, Crim. No. 07-389, 2020 WL 5793002, at *4-5 (M.D. Pa. Sept. 28, 2020) (finding that the defendant's "disciplinary record in jail indicates that she has been involved in a number of infractions, including fights, while imprisoned" and "[t]hus, the [c]ourt's review of the relevant section 3553(a) factors indicates that granting the relief that [the] [d]efendant seeks is inappropriate, and her motion for compassionate release will be denied").

Because the Court finds that Lynn may pose a danger to the public safety if released, his motion for compassionate release must be denied. *See United States v. Gideon*, Crim. No. 13-429, 2020 WL 7351212, at *3 (D.N.J. Dec. 15, 2020) (finding that when weighing the § 3553(a) factors, the concern that a defendant "may pose a danger to public safety if released . . . alone is sufficient to deny compassionate release" motions).

---

[7]  Based on the record before the Court, it appears that Lynn has not received a new disciplinary infraction in almost five years.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion for Compassionate Release (ECF No. 242) is **DENIED** without prejudice. An appropriate Order follows.

Dated: February 28th, 2025

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**